# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## OCALA DIVISION

SCOTTY KING, Individually and as
Personal Representative of the Estate
of Kimberly King,

       Plaintiff,

v.                              Case No.  5:17-cv-52-Oc-34PRL

LAKE COUNTY, et al.,

       Defendants.

_____/

## O R D E R

**THIS CAUSE** is before the Court on the separate motions to dismiss filed by the several defendants in this case.  Defendant Gary S. Borders, in his official capacity as Sheriff of Lake County, filed a Partial Motion to Dismiss Amended Complaint and Memorandum of Law (Doc. 20, Sheriff's Motion), on March 29, 2017.[1]  Defendants Nick Jones, Robert Sellers, Pablo Rivera, and Shawn Lukens filed a Motion to Dismiss Amended Complaint (Doc. 22, Individual Defendants' Motion), on March 30, 2017. Defendant Nate Pickens filed a Motion to Dismiss Plaintiff's Amended Complaint and Notice of Intent to Adopt and Join in Portions of Motion to Dismiss Amended Complaint by Defendants Jones, Sellers, Rivera, and Lukens (Doc. 24, Pickens' Motion), on April 4, 2017.  Also, Defendant Mascotte Police Department filed its Motion to Dismiss (Doc. 37,

---

[1] In the Sheriff's Motion, the Sheriff asserts that the Lake County Sheriff's Office is misidentified by Plaintiff as the Lake County Sheriff's Department.  Sheriff's Motion at 4.  Because the specific title is of no consequence to the outcome of any motion before the Court, in this Order, the Court will refer to the Defendant as denominated by the Plaintiff, the Lake County Sheriff's Department.

Mascotte Motion), on April 18, 2017.[2] In their motions, the Defendants request that the Court dismiss the amended complaint of Plaintiff Scotty King (King), individually and as Personal Representative of the Estate of Kimberly King. (Doc. 13, Amended Complaint, filed February 16, 2017). King opposes the Defendants' motions. See Plaintiff's Response to Defendant Sheriff of Lake County, Florida's Partial Motion to Dismiss (Doc. 54, Plaintiff's Response to Sheriff), filed May 12, 2017; Plaintiff's Response to Defendants Jones, Sellers, Rivera, and Lukens' Motion to Dismiss (Doc. 53, Plaintiff's Response to Individual Defendants), filed May 12, 2017; Plaintiff's Response to Defendant Nate Pickens' Motion to Dismiss (Doc. 56, Plaintiff's Response to Pickens), filed on May 15, 2017; Plaintiff's Response to Defendant Mascotte Police Department's Motion to Dismiss (Doc. 59, Plaintiff's Response to Mascotte), filed on May 23, 2017. Accordingly, this matter is ripe for review.[3]

---

[2] Additionally, Defendant Lake County filed its Motion to Dismiss Plaintiff's Amended Complaint at Law and Memorandum of Legal Authority (Doc. 25, Lake County's Motion), on April 4, 2017. In response to Lake County's Motion, King filed a Motion to Dismiss Defendant Lake County in Lieu of Response to Motion to Dismiss. See Doc. 57, Plaintiff's Motion to Dismiss Lake County, filed May, 15, 2017. The Court granted the Motion and dismissed the claims against Lake County on May 16, 2017. See Order Dismissing Lake County (Doc. 58, filed May, 16, 2017). As such, the Court omits any allegations directed at Lake City from its discussion from this Order.

[3] In his responses to the Defendants' Motions, King requests that in the event the Court finds his allegations to be inadequate, he be given the opportunity to file an amended complaint. See Plaintiff's Response to Individual Defendants at 11, 15; Plaintiff's Response to Sheriff at 8-9; Plaintiff's Response to Pickens at 8; Plaintiff's Response to Mascotte at 5, 9-10. On October 20, 2017, the Court declined these requests without prejudice, see Order Denying Motion to Amend at 3 (Doc. 75, filed October 20, 2017), noting that a request for affirmative relief, such as a request for leave to amend a pleading, is not properly made when simply included in a response to a motion. See FED. R. CIV. P. 7(b); see also Rosenberg v. Gould, 554 F.3d 962, 965 (11th Cir. 2009) ("Where a request for leave to file an amended complaint simply is imbedded within an opposition memorandum, the issue has not been raised properly.") (quoting Posner v. Essex Ins. Co., 178 F.3d 1209, 1222 (11th Cir. 1999)). The Court nonetheless advised King that "if he wishes to pursue such relief, he is required to file an appropriate motion, in accordance with the Federal Rules of Civil Procedure and the Local Rules of this Court." Order at 2 -3. King, who is represented by counsel, did not file a motion seeking leave to amend or otherwise make any attempt to remedy the pleading deficiencies identified in the Motion. See Wagner v. Daewoo Heavy Indus. Am. Corp., 314 F.3d 541, 542 (11th Cir. 2002) (en banc). King did not avail himself of that opportunity.

## I.  STANDARD OF REVIEW

In ruling on a motion to dismiss, the Court must accept the factual allegations set forth in the complaint as true.  See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508, n.1 (2002); see also Lotierzo v. Woman's World Med. Ctr., Inc., 278 F.3d 1180, 1182 (11th Cir. 2002).  In addition, all reasonable inferences should be drawn in favor of the plaintiff.  See Omar ex. rel. Cannon v. Lindsey, 334 F.3d 1246, 1247 (11th Cir. 2003) (per curiam).  Nonetheless, the plaintiff must still meet some minimal pleading requirements.  Jackson v. BellSouth Telecomm., 372 F.3d 1250, 1262–63 (11th Cir. 2004) (citations omitted).  Indeed, while "[s]pecific facts are not necessary," the complaint should "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  Further, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).  A "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (citations omitted); see also BellSouth Telecomm., 372 F.3d at 1262 (explaining that "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal") (citations and quotations omitted).  Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable

to legal conclusions," which simply "are not entitled to [an] assumption of truth." See Iqbal, 556 U.S. at 679. Thus, in ruling on a motion to dismiss, the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. at 678 (quoting Twombly, 550 U.S. at 570).

## II. BACKGROUND[4]

This action arises out of a high speed police chase that resulted in the untimely and tragic death of Kimberly King.

On May 12, 2016, at approximately 6:30 p.m., Deputy Nick Jones, a member of the Street Crimes Unit of the Lake County Sheriff's Department (LCSD), who was on patrol in Leesburg, Florida, observed a female driver stop beyond the stop bar at an intersection. Amended Complaint at ¶¶ 21-22. The driver's action constituted a noncriminal traffic violation punishable as a moving violation. Id. at ¶ 22. Two of Jones' fellow Street Crime Unit members, Deputy Shawn Lukens and Deputy Robert Sellers, were positioned two blocks from Jones. Allegedly, "upon apparently observing these officers," the driver made an abrupt turn. Id. at ¶ 25. Jones followed the driver, eventually turning on his emergency equipment. Id. at ¶¶ 25-27. When the driver began to accelerate, Sellers and Lukens, along with Deputy Pablo Rivera, joined in the pursuit with their emergency equipment activated. Id. at ¶ 28. As the pursuit continued, the driver failed to yield at stop signs, and the chase proceeded to a local highway. Id. at ¶ 30.

---

[4] In considering the motions to dismiss, the Court must accept all factual allegations in the Amended Complaint as true, consider the allegations in the light most favorable to the Plaintiff, and accept all reasonable inferences that can be drawn from such allegations. Hill v. White, 321 F.3d 1334, 1335 (11th Cir. 2003); Jackson v. Okaloosa Cnty., Fla., 21 F.3d 1531, 1534 (11th Cir. 1994). As such, the facts recited here are drawn from the Amended Complaint, and may well differ from those that ultimately can be proved.

Additionally, Corporal Nate Pickens, a supervisor of Jones, Sellers, Lukens, and Rivera, joined in the chase, taking the lead.  Id. at ¶ 31.  During the pursuit, and on two different occasions at two different locations, deputies from the LCSD and the City of Leesburg placed "stop sticks"[5] in the driver's path in an attempt to stop her.  The driver was able, nonetheless, to evade both sets of stop sticks.  Id. at ¶ 33, 36, 37.

At approximately 6:51 p.m., the LCSD deputies "requested via radio transmission that the Mascotte Police Department deploy two sets of stop sticks [along the driver's route] at the Mascotte city limits."  Id. at ¶ 39.  At that time, the "Mascotte Police Department was advised that [the driver] was suspected of grand theft, fleeing, and eluding."  Id. at ¶ 40.  Mascotte Police Department officers placed the stop sticks in the driver's path, and "at approximately 6:58 p.m., [the driver's] vehicle hit both sets of stop sticks, travelling at approximately 70 miles per hour.  The suspect continued . . . [and] appeared to completely lose control and travel into oncoming traffic."  Id. at ¶ 43.

At that time, Kimberly King was travelling on the same roadway in the opposite direction of the driver.  Id. at ¶ 44.  The driver's vehicle hit Kimberly King's "vehicle head-on and caught fire.  [The driver] was pronounced dead at the scene.  Kimberly King was transported via ambulance to [a local hospital] where she was pronounced dead."  Id. at ¶¶ 45-47.

Information gathered after the crash from the pursuing deputies' global positioning software indicated that the pursuit of the driver lasted 17 minutes, and that the deputies' speeds ranged between 66 and 123 miles per hour.  Id. at ¶ 48.  The LCSD has a vehicular pursuit policy which guides as follows:

---

[5] Stop sticks "are a tire deflation device, allowing an officer to remotely deploy Teflon spikes into the tires of a fleeing vehicle."  Amended Complaint at ¶ 34.

> [A] deputy must realize that it is his or her duty to operate the vehicle safely at all times, especially while in the act of pursuit. The fact that a deputy is engaged in a pursuit does not relieve nor protect that deputy from the consequences of a reckless disregard for the safety of others . . . Pursuits involving traffic or non-violent misdemeanors will involve only one primary patrol unit in pursuit and no more than one secondary unit assisting unless directed otherwise by a supervisor . . . The secondary back-up unit will remain at a safe distance during the pursuit. The secondary back-up unit's purpose will be to arrive shortly after the pursuit termination.

Id. at ¶ 49. Additionally, LCSD policy directs that a "deputy is to terminate a pursuit when the danger involved in the pursuit is greater than the offence which was committed or believed to have been committed." Id. at ¶ 50 (internal quotations omitted).

After the crash, the Office of Professional Standards of the LCSD interviewed the officers involved in the pursuit. Id. at ¶ 53. During those interviews, the deputies stated that they were aware of LCSD's pursuit policy, "but that the 'Street Crimes Unit always stays together,' and that all units within the Street Crimes Unit are involved each time any officer initiates a vehicular pursuit." Id. at ¶ 53 (quoting Defendant Pablo Rivera); see also at ¶ 54 (Street Crimes Unit frequently "pushes the boundaries" of department guidelines); ¶ 56 (it was understood that the Street Crimes Unit "stick together when it comes to pursuits"); ¶ 57 ("there is an understanding with Street Crimes supervisors that all units will be involved" in vehicular pursuits); ¶ at 59 (the use of two or more units during vehicular pursuits has been "an accepted practice since the Street Crimes Unit was formed" and "has never come under scrutiny").

LCSD placed all of the deputies involved in the incident "on administrative leave with pay during a period of administrative review." Id. at ¶ 60. At the conclusion of the administrative review, Lake County Sheriff Gary Borders concurred with the division major's determination that Jones, Sellers, Rivera, and Lukens did not violate the vehicular

pursuit policy given that Pickens "'supervised and ultimately led' the pursuit." Id. at ¶ 61. However, the Sheriff found Pickens, a corporal, to have violated regulations "pertaining to failure to perform the duties of rank or assignment." Id. at ¶ 62.

As a result of these events, Scotty King, as the surviving spouse and Personal Representative of the Estate of Kimberly King, brought this action alleging a host of claims against the various Defendants. In Count I, King seeks relief from Defendants Jones, Sellers, Rivera, Lukens, Pickens and John Doe Officers 1-10 (herein, Individual Defendants and Pickens), under 42 U.S.C. § 1983 (§ 1983), asserting that the Individual Defendants and Pickens deprived Kimberly King of her constitutionally protected right under the Due Process Clause of the Fourteenth Amendment to be "free from state actions that deprive her of life, liberty, or property in such a manner as to shock the conscience." Id. at ¶ 65.[6] In Counts II through IV, King brings claims against the LCSD, Borders, and the Mascotte Police Department. In Count II, he asserts these Defendants are subject to liability under § 1983 for failing to properly train their deputies in vehicular chases and the use of stop sticks. Id. at ¶ 72. In Count III, King claims that these Defendants are also liable under § 1983 for having "in effect policies, practices, or customs that perpetuated and fostered the unconstitutional conduct of" the Individual

---

[6] In Count I, King also asserted a claim in his own right, to be "free from state actions that deprive him of life, liberty, or property in such a manner as to shock the conscience, including but not limited to unwarranted state interference in [his] familial relationship with his spouse, decedent Kimberly King." Id. at ¶ 64. However, in Plaintiff's Response to Individual Defendants, King states that he no longer intends "to advance this theory." Plaintiff's Response to Individual Defendants at 11. As such, the Court will dismiss King's individual claim and address it no further.

Also in regard to Count I, the Court notes some ambiguity as to whether King seeks relief from Defendant Pickens. King identifies Pickens in the title of the claim and in paragraph 66 of the Amended Complaint alleges that Pickens' actions "shock[ed] the conscience in that [he] acted with deliberate indifference" to Kimberly King's constitutionally protected rights with a purpose to harm unrelated to his pursuit of the driver. Id. at ¶ 66. Yet, in the "Wherefore" clause of Count I, King does not seek damages from or judgment against Pickens. Id. at 11. Given this ambiguity, and construing the Amended Complaint in favor of King, the Court reads it as seeking to state a claim against Pickens as well as the Individual Defendants.

Defendants and Pickens.  Id. at ¶ 82.  Finally, in Count IV, he alleges that the same Defendants failed to "properly supervise its agents, employees, and officers," thereby resulting in Kimberly King's death.  Id. at ¶ 94.

In Count V, King asserts that the Lake County Sheriff's Department, Borders, and the Individual Defendants are liable under § 1983 for ratification because those in a supervisory capacity "knew of and specifically approved of" the Individual Defendants' actions.  Id. at ¶ 107.  Finally, in Counts VI and VII, King brings Florida wrongful death actions against the Individual Defendants and Pickens, and Borders, respectfully.  Id. at ¶¶ 114, 119.[7]

## III.  ARGUMENTS OF THE PARTIES

The various Defendants have filed motions to dismiss the claims asserted in this case.  In the Sheriff's Motion for partial dismissal, the Sheriff raises three issues.  First, he seeks to dismiss the LCSD as a defendant, as that office "has no legal status as an entity that may sue or be sued."  Sheriff's Motion at 4.  Second, the Sheriff requests that the Court substitute Gary S. Borders, in his official capacity as Sheriff of Lake County, with the more appropriate denomination of "Sheriff of Lake County, Florida, in his official capacity."  Id. at 5.[8]  Third, the Sheriff asserts that Counts V and VII should be dismissed for failure to state a claim.[9]  As to the Count V ratification claim, the Sheriff contends that he neither knew in advance of, nor approved of the deputies' high speed pursuit and use of stop sticks while those events were occurring.  Id. at 8.  Moreover, he asserts that any post-incident review of the deputies' pursuit does not satisfy the legal requirements for

---

[7] Neither Counts VI or VII include claims against John Does 1 -10.
[8] The Sheriff's Motion also notes that Gary Borders has since retired and is no longer Sheriff.  Sheriff's Motion at 5.
[9] The Sheriff's Motion does discuss Counts II-IV.

ratification.  Id. at 9.  As to the Count VII wrongful death claim, the Sheriff argues that pursuant to Florida law, he cannot be held vicariously liable for the acts of his employees where, as is the case here, King alleges that the employees acted in a willful and wanton manner.  Id. at 10.[10]

In response to the Sheriff's Motion, King acknowledges the improper identification of Gary S. Borders as a defendant, and seeks to clarify that all relevant claims are asserted against the "Sheriff of Lake County, Florida, in his official capacity."  Plaintiff's Response to Sheriff's Motion at 6.  King also alleged that he has asserted sufficient facts to support a claim of ratification.  Id. at 6-7.  Finally, King asserts that should the Court determine that the Individual Defendants and Pickens did not act in a willful and wanton manner in the events surrounding Kimberly King's death, through pleading in the alternative, the Sheriff of Lake County, Florida, in his official capacity, could be held vicariously liable for Kimberly King's death.  Id. at 8.

In the Individual Defendants' Motion, the Individual Defendants assert that as to the Count I due process claim, King has failed to state a claim upon which relief can be granted, or in the alternative, that they are entitled to qualified immunity from suit. Individual Defendants' Motion at 2.  In response to the Count V ratification claim, the Individual Defendants argue that it is inappropriate to include them in that claim. They assert that the facts that King sets forth in the Amended Complaint allege that it was the County and the LCSD that ratified the Individual Defendants' actions, and there is no allegation that the Individual Defendants engaged in the act of ratifying anyone else's

---

[10] In the Amended Complaint King alleges that "at all relevant times, Defendant Officers owed a duty of care to . . . Decedent to refrain from willful and wanton conduct which would endanger the safety of others, including Kimberly King.  Defendant officers breached the aforementioned duty by committing . . . the following willful and wanton actions . . . . ."  Amended Complaint at ¶¶ 112 -113.

actions.  Id. at 2.  Finally, in response to the Count VI wrongful death claim, the Individual Defendants contend that they are entitled to immunity from suit pursuant to Florida law. Id. at 2.  Therefore, the Individual Defendants seek dismissal of Counts I, V and VI as against them.

In response to the Individual Defendants' Motion, King argues that he has alleged sufficient facts to support the Count I substantive due process claim against the Individual Defendants, and that they are not entitled to qualified immunity.  Plaintiff's Response to Individual Defendants at 6, 11.  Likewise, in regard to the Count VI wrongful death claim, King argues that he has alleged sufficient facts to overcome the Individual Defendants' claims of immunity.  Id. at 13.[11]

In the Pickens' Motion, Pickens "adopts and incorporates the argument and legal citation set forth" in the Individual Defendants' Motion regarding the Count I § 1983 claim. Pickens' Motion at 3.  Additionally, Pickens contends that King's Amended Complaint lacks sufficient factual allegations to "support liability against Defendant Corporal Pickens under the theory of supervisory liability," and therefore Count I should be dismissed against him.  Id. at 3.  Finally, Pickens asserts that the Count VII claim for wrongful death should be dismissed against him for the same reasons articulated by the Individual Defendants.  Id. at 4.  In response, King "adopts and incorporates the arguments set forth . . . [in] his Response" to the Individual Defendants' Motion, and also asserts that in the Amended Complaint he has alleged sufficient facts to support a claim of supervisory liability against Pickens.  Plaintiff's Response to Pickens at 6.

---

[11] In his response to the Individual Defendants' Motion, King does not address the Count V ratification claim. A such, it appears King has abandoned the claim in Count V as to the Individual Defendants.

Finally, the Mascotte Police Department raises two issues in the Mascotte Motion. First, Mascotte notes that all claims against the Mascotte Police Department should be dismissed because the Police Department is not a separate legal entity subject to suit. Mascotte Motion at 3. Second, to the extent that the Court decides to construe the claims against the Mascotte Police Department as claims against the City of Mascotte, the Mascotte Police Department contends that King has failed to allege facts suggesting that the City of Mascotte committed a constitutional violation against Kimberly King, whether directly through its officers laying down the stop sticks, or through a "failure to train," "failure to supervise," or "custom, policy, and practice" theory of liability. Id. at 4, 7, 8. In response, King recognizes that he improperly identified the Mascotte Police Department as a defendant, and seeks to clarify that he intended to reference the City of Mascotte. Plaintiff's Response to Mascotte at 5. Additionally, King asserts that he did indeed sufficiently allege facts to support a § 1983 claim against the City of Mascotte and its deputies in the context of the placement of the stop sticks that contributed to Kimberly King's death. Id. at 6-9.

The Court will first address the arguments raised by various Defendants regarding the manner in which they are identified in the Amended Complaint, and whether they are proper parties to this action. Then the Court will turn to the substantive arguments on the merits of King's claims.

## IV.    DISCUSSION

### a.  Preliminary Pleading Matters

Before addressing the merits of the parties' arguments, the Court first addresses a number of pleading inaccuracies in King's Amended Complaint, wherein King either inaccurately names, or improperly includes, certain Defendants in this action.

First, and as noted previously, the Lake County Sheriff's Office is misidentified by Plaintiff as the Lake County Sheriff's Department.  Sheriff's Motion at 4.  More importantly, and regardless of whether King intended to sue the Lake County Sheriff's Office as a defendant or the LCSD, King's claims against this Defendant are due to be dismissed. Rule 17(b) of the Federal Rules of Civil Procedures (Rule(s)), provides that the "[c]apacity to sue or be sued is determined . . . by the law of the state where the court is located." FED. R. CIV. PRO. 17(b)(3).  Under Florida law, a sheriff's department is not a legal entity that can be sued.  Christy v. Sheriff of Palm Beach County, Fla., 288 Fed. Appx. 658, 662-63 (11th Cir. 2008).  See also Dean v. Barber, 951 F.2d 1210, 1214 (11th Cir. 1992) ("Sheriff's departments and police departments are not usually considered legal entities subject to suit.").  As such, the claims against the LCSD (or arguably, properly named the Lake County Sheriff's Office) will be dismissed from this action.

Next, the Court turns to the Sheriff's assertion that Borders is not a properly named party to this action.  As to this issue, the Sheriff explains that Borders has retired and is no longer Sheriff of Lake County.  Sheriff's Motion at ¶ 8.  In bringing an action against a public official, it is not necessary to identify the public officer by name.  Rather, the party may be designated merely by his or her official title.  See FED. R. CIV. PRO. 17(d) ("A public officer who . . . is sued in an official capacity may be designated by official title rather than

by name . . . .").  As such, the Sheriff requests that the Court substitute "Sheriff of Lake County, in his official capacity," in lieu of "Gary S. Borders, in his official capacity." Notably, King acknowledges that as to the Lake County Sheriff's Office and Gary S. Borders, his designation of both was in error.  Plaintiff's Response to Sheriff at 6.  He explains that his intent was to name as a defendant the "Sheriff of Lake County, in his official capacity," and joins the Sheriff in requesting that the Court identify the Sheriff as the proper defendant in this action.  Id.

Rule 25(d) states that "[a]n action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending.  The officer's successor is automatically substituted as a party."  FED. R. CIV. PRO. 25(d).  See also Hafer v. Melo, 502 U.S. 21, 25 (1991) (". . . when officials sued in [their official] capacity in federal court die or leave office, their successors automatically assume their roles in the litigation"); Nat'l Wildlife Fed. v. Burford, No. 85-2238, 1987 WL 12129, *1 (D. D.C. June 2, 1987) (Rule 25(d) provides for the automatic substitution of a public official's successor in an action where the party is sued in his official capacity).  Accordingly, the Court will substitute the Sheriff of Lake County, in his official capacity, for Defendant Borders, and will direct the Clerk of the Court to correct the case style accordingly.

Additonally, the Court notes that the John Doe Defendants 1-10 should be dismissed from this action.   Generally, the federal courts do not permit fictitious party pleading.  See Williams v. DeKalb County Jail, 638 Fed. Appx. 976, 976-77 (11th Cir. 2016); Weiland v. Palm Beach County Sheriff's Office, 792 F.3d 1313, 1318 n.4 (11th Cir. 2015).  A narrow exception exists where "the plaintiff's description of the defendant is so

specific as to be 'at the worst, surplusage.'" Minnis v. Keaton, No. 17-CIV-20575-GAYLES, 2017 WL 2471080, *8 (S.D. Fla. May 5, 2017) (citing Dean v. Barber, 951 F.2d 1210, 1215-16 (11th Cir. 1992)), affirmed and adopted by Minnis v. Keaton, No. 17-cv-20575/GAYLES/WHITE, 2017 WL 2464835 (S.D. Fla. June 7, 2017). This exception permits a plaintiff to "proceed against an unnamed or fictitious defendant only when . . . it is clear that discovery will uncover the defendant's identity, or when the plaintiff's description of the individual is sufficiently clear to allow service of process on that defendant." Id. Conversely, "failing to describe unnamed defendants, or merely giving general descriptions without making any timely discovery requests to attempt to ascertain their identities, will properly result in the dismissal of those defendants." Id. Here, King, who is represented by counsel, has had the opportunity to investigate and determine the names of the ten unnamed officers, but has failed to do so. See White v. City of Birmingham, 96 Fed. Supp. 3d 1260, 1281-82 (N.D. Ala. 2015) (where plaintiff is represented by counsel who fails to investigate names of otherwise fictitiously named defendants, claims against defendants should be dismissed). Given the Court's inability to identify the John Doe Defendants in order to summon them to answer the claims against them, Paulcin v. McNeil, No. 3:08cv378/RV/EMT, 2009 WL 311078, *2 (N.D. Fla. Feb. 9, 2009) ("If a John Doe cannot be identified sufficiently in order to summon that individual to appear, dismissal of that Defendant from this action will be warranted."), and the general prohibition against fictitious party pleading, the Court determines that the John Doe Defendants are due to be dismissed from this action.

Finally, the Court addresses King's naming of the Mascotte Police Department as a defendant in this action. As noted earlier, the "[c]apacity to sue or be sued is determined

. . . by the law of the state where the court is located." FED. R. CIV. PRO. 17(b)(3). Pursuant to Florida law, "municipalities have the power to sue and be sued." Fla. City Police Dep't v. Corcoran, 661 So.2d 409, 410 (Fla. 3d Dist. Ct. App. 1995). Additionally "[w]here a police department is an integral part of the city government as the vehicle through which the city government fulfills its policing functions, it is not an entity subject to suit." Id. See also Everett v. Marianna Police Dep't, No. 5:07cv284/RS/MD, 2008 WL 222713, at *2 (N.D. Fla. Jan. 25, 2008) (recognizing that "the Florida courts have found that the city police department is not a legal entity and has no legal existence separate and apart from the city"); Zayas v. Osceola Mental Health, Inc., No. 6:07-cv-1779-Orl-31KRS, 2007 WL 4287638, at *2 (M.D. Fla. Dec. 5, 2007) (acknowledging that "[t]he Eleventh Circuit has held that police departments are not usually considered legal entities subject to suit") (citing Dean v. Barber, 951 F.2d 1210, 1214 (11th Cir. 1992)); Hall v. M. Neal, T-10, No. 5:04-cv-65-Oc-10GRJ, 2006 WL 462600, at *3 (M.D. Fla. Feb. 27, 2006). Instead, the proper party to be named is the city or municipal corporation of which the police department is a part. Mann v. Hillsborough County Sheriff's Office, 946 F. Supp. 962, 970-71 (M.D. Fla. 1996).

In this regard, the Mascotte Police Department contends that it is improperly named as a defendant and should be dismissed. Mascotte's Motion at 4. King acknowledges his error in naming the Mascotte Police Department, and states that it was his intent to designate the City of Mascotte as the proper defendant. Plaintiff's Response to Mascotte at 5.[12] Accordingly, the Court also will dismiss the Mascotte Police Department from this action.

---

[12] King indicated a desire to amend his Amended Complaint to identify the City of Mascotte as a defendant in this action. Id. at 5, 9-10. However, as noted earlier, the Court denied King's request without prejudice

In summary, the Lake County Sheriff's Department, the Mascotte Police Department, and the John Doe Defendants will be dismissed from this action. Additionally, the Sheriff of Lake County, in his official capacity will be substituted for Gary S. Borders, in his official capacity as Sheriff of Lake County. The Court will limit its discussion of the merits of King's claims to those Defendants that remain after these dismissals and the substitution.

### b. Count I: § 1983 Substantive Due Process Claim against the Individual Defendants and Pickens

In Count I of his Amended Complaint, King asserts that the Individual Defendants and Pickens violated Kimberly King's right "to be free from state actions that deprive her of life, liberty, or property in such a manner as to shock the conscience." Amended Complaint at ¶ 65. More particularly, King claims that the acts of the Individual Defendants and Pickens

> shock[] the conscience, in that they acted with deliberate indifference to the constitutional rights of . . . Decedent, and with purpose to harm unrelated to any legitimate law enforcement objective, when they continued a vehicular pursuit despite the duration of the chase, the high rates of speed, the ability to run [the driver's] license plate number and apprehend her at a later time, and the lack of probable cause to believe [the driver] had committed a violent crime or felony.

Id. at ¶ 66. In response, the Individual Defendants and Pickens argue that King's Amended Complaint fails to allege that they acted with the purpose to cause harm unrelated to any legitimate law enforcement objective, or at a minimum, they are entitled to qualified immunity. Individual Defendants' Response at 8, 19.

---

to his filing a properly supported motion to amend his Amended Complaint. See Order Denying Motion to Amend at 3. The Court nonetheless advised King that if he wished to pursue such relief, he needed to file an appropriate motion with the Court. King has not done so.

"Qualified immunity protects from civil liability government officials who perform discretionary functions if the conduct of the officials does not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" Nolin v. Isbell, 207 F.3d 1253, 1255 (11th Cir. 2000) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  As a result, this defense protects from suit "'all but the plainly incompetent or those who knowingly violate the law.'"[13] Carr v. Tatangelo, 338 F.3d 1259, 1266 (11th Cir. 2003) (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)).  Indeed, as "'government officials are not required to err on the side of caution,' qualified immunity is appropriate in close cases where a reasonable officer could have believed that his actions were lawful."  Lee v. Ferraro, 284 F.3d 1188, 1200 (11th Cir. 2002) (quoting Marsh v. Butler Cnty., 268 F.3d 1014, 1031 n. 8 (11th Cir. 2001)).  In order to be entitled to qualified immunity, the Individual Defendants and Pickens must first establish that their conduct was within the scope of their discretionary authority.[14]  See Webster v. Beary, 228 F. App'x 844, 848 (11th Cir. 2007) (per curiam); Lee, 284 F.3d at 1194.

In this case, it appears that the Individual Defendants and Pickens, in pursuing the driver on May 12, 2016, for potentially committing a traffic offense, were acting within their discretionary authority.  See Individual Defendants' Motion at 19.  Notably, King does not dispute such a finding or allege any facts undermining such a conclusion.  See generally Plaintiff's Response to Individual Defendants.  As such, the Court finds that the Individual

---

[13] In determining whether a defendant is entitled to qualified immunity, the court views the facts and all reasonable inferences in the light most favorable to the plaintiff to the extent supported by the record, and then considers "the legal issue of whether the plaintiff's 'facts,' if proven, show that the defendant violated clearly established law."  Priester v. City of Riviera Beach, 208 F.3d 919, 925 n. 3 (11th Cir. 2000); Scott v. Harris, 550 U.S. 372, 381 n.8 (2007).

[14] "'A government official acts within [his] discretionary authority if the actions were (1) undertaken pursuant to the performance of [his] duties and (2) within the scope of [his] authority.'" Jones v. City of Atlanta, 192 F. App'x 894, 897 (11th Cir. 2006) (per curiam) (quoting Lenz v. Winburn, 51 F.3d 1540, 1545 (11th Cir. 1995)).

Defendants and Pickens have satisfied this threshold burden.  See Lee, 284 F.3d at 1194 (finding that "there can be no doubt that [the officer] was acting in his discretionary capacity when he arrested [the plaintiff]," even though the plaintiff asserted that the officer used excessive force in the manner in which she was arrested).

Having established that the Individual Defendants and Pickens are alleged to have acted within their discretionary authority, "the burden shifts to the plaintiff to show that qualified immunity is not appropriate."  Lee, 284 F.3d at 1194.  Here, King must establish two elements: (a) that the Defendants violated a constitutional right, and (b) the right violated was clearly established.  Kingsland v. City of Miami, 382 F.3d 1220, 1232 (11th Cir. 2004) (citing Saucier v. Katz, 533 U.S. 194, 201 (2001)).  The Court may consider these elements in whichever order it chooses, and qualified immunity will protect the defendants if the plaintiff fails to establish either element.  Pearson v. Callahan, 555 U.S. 223, 232, 236 (2009).  In this instance, the Court will begin its analysis with the first element: whether the Individual Defendants and Pickens violated Kimberly King's constitutional rights protected under the substantive due process clause of the Fourteenth Amendment.  In answering this first question, the Court is able to address both the matter of whether King has stated a claim upon which relief can be granted, as well as whether the Defendants may be entitled to qualified immunity.

King asserts that the Individual Defendants and Pickens deprived Kimberly King of her right to life by engaging in a high speed vehicular pursuit with a "purpose to harm unrelated to any law enforcement objective."  Amended Complaint at ¶ 66.  More particularly, King asserts that the deputies' actions shocked the conscience because instead of engaging in the chase, they could have run the fleeing driver's license plate to

determine her address and apprehended her at a later time, and that the deputies allegedly lacked probable cause to believe the fleeing driver "had committed a violent crime or felony." Id. In making these arguments, King relies on the the Supreme Court's decision of County of Sacramento v. Lewis, 523 U.S. 833 (1998), a seminal case addressing a substantive due process claim in the context of a police chase. Plaintiff's Response to Individual Defendants at 6.

In Lewis, a motorcycle passenger was killed in a police chase. Id. at 836-37. As law enforcement pursued the motorcycle at high speed, the motorcycle tipped over. Although the motorcycle driver was able to reach safety, the passenger was thrown into the road where the pursuing officer struck him causing fatal injuries. Id. The passenger's parents brought a § 1983 action against the individual officer, as well as the county and sheriff's department associated with the chase, alleging a violation of the passenger's substantive due process right to life. Id. Although the trial court granted summary judgment in favor of the law enforcement defendants, the Ninth Circuit Court of Appeals reversed. Id. at 838. In doing so, the Ninth Circuit determined that the applicable legal standard was whether the officer's conduct "amounted to deliberate indifference," id. at 839, and found genuine issues of fact because the officer's conduct arguably violated general orders regarding his contact with dispatch, and the propriety of a high speed chase given the conditions, the seriousness of the offense, and the possibility of unreasonable hazards to life and property. Id. Granting a petition for writ of certiorari to resolve a circuit conflict, the Supreme Court directly addressed the appropriate standard to apply in cases such as this.

> The issue in this case is whether a police officer violates the Fourteenth Amendment's guarantee of substantive due process by causing death

through deliberate or reckless indifference to life in a high-speed automobile chase aimed at apprehending a suspected offender. We answer no, and hold that in such circumstances only a purpose to cause harm unrelated to the legitimate object of arrest will satisfy the element of arbitrary conduct shocking to the conscience, necessary for a due process violation.

Id. at 836.

In reaching its conclusion, the Lewis Court reiterated that the standard benchmark for evaluating such claims is to ask whether the abuse of government power "shocks the conscience," id. at 846, in that "only the most egregious official conduct can be said to be arbitrary in the constitutional sense." Id. (internal citations and quotations omitted). So doing, the Supreme Court acknowledged that "[w]hile the measure of what is conscience shocking is no calibrated yard stick, it does . . . point the way." Id. at 847 (internal citations and quotations omitted). Accordingly, the Lewis Court noted that "the due process guarantee does not entail a body of constitutional law imposing liability whenever someone cloaked with state authority causes harm," id. at 348, and hence the "Constitution does not guarantee due care on the part of state officials; liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process." Id. at 849. Conversely, "behavior at the other end of the culpability spectrum . . . would most probably support a substantive due process claim; conduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level." Id.

In applying these general principles to the facts presented in the Lewis case, the Supreme Court observed that

[a] police officer deciding whether to give chase must balance on one hand the need to stop a suspect and show that flight from the law is no way to freedom, and on the other, the high-speed threat to all those within

stopping range, be they suspects, their passengers, other drivers, or bystanders.

Id. at 853.  Acknowledging that in the context of a high-speed chase, an officer must weigh these two competing goals, the Court announced that "high-speed chases with no intent to harm suspects physically or to worsen their legal plight do not give rise to liability under the Fourteenth Amendment, redressable by an action under § 1983."  Id. at 854. See also Willis v. Mock, 600 Fed. Appx. 679, 685-86 (11th Cir. 2015) (applying Lewis); Sanders v. City of Union Springs, 207 Fed. Appx. 960, 965 (11th Cir. 2006) (same).

Applying the standard articulated by the Supreme Court in Lewis, here the Court must determine whether King has sufficiently pled that the Individual Defendants and Pickens, as they engaged in their vehicular pursuit of the driver, did so with the requisite intent to harm.  Whether King must plead that the deputies intended to harm the fleeing driver or Kimberly King is of no matter, because as to either,[15] King has not pled facts plausibly satisfying his burden.

_____

[15] The Supreme Court in articulating the intent to harm standard did not specifically address the proper object of the "intent to harm."  Lewis, 523 U.S. at 854.  In Lewis, the passenger, who was ultimately killed, was on a motorcycle whose driver was fleeing the police.  As a result, the Court's language focused on an officer's intent to harm "suspects."  Id.  The Court did not specifically address whether any resulting harm to other drivers or by-standards also had to be intended by the officer.  However, in dicta, the Court did opine that an officer, in balancing how and whether to engage in a pursuit, had to consider "the high-speed threat to all those within stopping range, be they suspects, their passengers, other drivers, or bystanders."  Id. at 853.  Therefore, while the language of the Supreme Court's holding focuses on suspects, the Court's reasoning and associated dicta suggest that the intent to harm standard could be applied not only in settings where a fleeing suspect suffers harm, but also in settings where an innocent driver, passenger, or by-stander is injured as a consequence of a high-speed police chase.

The Eleventh Circuit has not directly addressed this nuance, but district courts within the Eleventh Circuit have applied the intent to harm standard to settings where someone other than the fleeing suspect is injured as a result of the vehicular pursuit.  See e.g., Perez. v. City of Sweetwater, No. 16-24267-CIV-ALTONAGA/O'Sullivan, 2016 U.S. Dist. LEXIS 178102, *10-11 (S.D. Fla. December 22, 2016) (Lewis standard applied where injured party was not the fleeing suspect); Medrano-Arzate v. May, No. 2:15-CV-14408-ROSENBERG/LYNCH, 2016 WL 3033195, *3 (S.D. Fla. 2016) (same); Knight v. Pugh, 801 F. Supp. 2d 1235, 1238 (M.D. Ala. 2011) (same); Levy v. City of Hollywood, 90 F. Supp. 2d 1344, 1346-47 (S.D. Fla. 2000) (same).  The same is true for other federal circuit courts.  See e.g., Ellis v. Ogden City, 589 F.3d 1099, 1103 n.3 (10th Cir. 2009); Meals v. City of Memphis, TN, 493 F.3d 720, (6th Cir. 2007); Bublitz v. Cottey, 327 F.3d 485, 490 (7th Cir. 2003); Helseth v. Burch, 258 F.3d 867, 872 (8th Cir. 2001); Davis v. Township of Hillside, 190 F.3d 167, 169 (3d Cir. 1999); Onossian v. Block, 175 F.3d 1169, 1171

King argues that he has pled a plausible claim that the Individual Defendants and Pickens acted with an intent to harm because of his allegations regarding the length of the chase, the high speeds involved, the fact that the deputies could have run a license check on the fleeing driver and apprehended her later, and the fact that the deputies lacked probable cause to believe the fleeing driver committed a violent crime or felony. After careful consideration, the Court concludes that these allegations are insufficient.

The circumstances of Kimberly King's untimely death are indeed tragic. However, they fall well short of the circumstances alleged in those cases in which courts have determined that the plaintiff pled facts suggesting that the defendants possessed the requisite intent to harm necessary to support a § 1983 claim. For example, a court found the plaintiff sufficiently pled, although "just barely," an intent to harm where the plaintiff alleged animosity between the officer and the harmed individual which could suggest the officer pursued the individual with a purpose unrelated to the legitimate object of arrest. See Estate of Wondercheck v. Nebraska, No. 4:06CV3087, 2006 WL 3392185, *1 (D. Neb. Oct. 18, 2006). Similarly, in Black v. City of Blue Ash, No. 1:08-cv-00584, 2009 WL 799063 (S.D. Ohio Mar. 23, 2009), the court found that an intent to harm had been pled where the plaintiff alleged that, in the course of chasing a suspect, the officer stated "I am going to take this guy out if I get a chance." Id. at *1. Likewise, in both Spencer v. City of West Palm Beach, No. 15-CV-80019, 2015 WL 4651089 (S.D. Fla. Aug. 5, 2015), and Patterson v. Walden, No. 13-0109-WS-B, 2013 WL 3153761 (S.D. Ala. June 18, 2103), the courts found an intent to harm had been alleged sufficiently where the pursuing

(9th Cir. 1999). See also Suit v. City of Folsom, No. 2:16-00807 WBS AC, 2016 WL 6696060, *2 (E.D. Cal. Nov. 15, 2016); Sidi v. City of Cincinnati, No. 1:13cv242, 2014 WL 1276195, *3-4 (S.D. Ohio Mar. 27, 2014); Smith v. City of Thornton, No. 12-cv-02915-WYD-MEH, 2013 WL 5420706, *4-5 (D. Colo. Sept. 27, 2013).

officers intentionally collided into the fleeing vehicles, causing one to crash into a tree, Spencer, 2015 WL 4651089 at *1, and the other to go airborne and flip over. Patterson, 2013 WL 3153761 at *4.

Finally, in Perez, 2016 U.S. Dist. LEXIS 178102, the court ruled that the plaintiff had pled an intent to harm sufficiently where the plaintiff was injured in a collision with another driver who was fleeing the police. The plaintiff alleged that the police initially pulled the driver over for driving erratically. During the otherwise routine traffic stop, the officers allegedly escalated the encounter "into a physical confrontation . . . unrelated to the purpose of the stop," id., at *2, when they drew their weapons and attempted to shoot at the driver. Id. As pled by the plaintiff,

> [t]he Officers justified their actions after the fact by claiming that [the driver] had given false information regarding his identity during the stop. The officers then fired their weapons at [the driver] with the intent to harm him in a manner that was unrelated and disproportionate to the legitimate object of their arrest. [The driver] fled in his car fearing for his life, and [one officer] began a high speed chase

during morning rush-hour traffic, while another officer shot at the fleeing vehicle. Id. at *2, *11 (citations omitted). While fleeing "in fear for his life," the individual driver struck the plaintiff, causing him severe injuries. Id. at 3. In reviewing these allegations, the court noted that "more than an unadorned, the defendant-unlawfully-harmed me accusation" was required. Id. at *4 (citing Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570)). Indeed, "a plaintiff must plead factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citations omitted). Applying that standard to the facts alleged in the plaintiff's complaint, the court determined that the plaintiff had alleged a plausible claim that the defendant officers' high speed

chase and shooting at the driver were "unrelated to the legitimate objective of detaining or arresting'" the driver, id. at *8, and rather, were done with an intent to harm. Id. at 11.

The facts alleged in King's Amended Complaint bear no resemblance to those in these cases. King alleges no facts suggesting animosity between the deputies and the fleeing driver, Estate of Wondercheck, 2006 WL 3392185 at *1; he points to no verbal statements suggesting an intent to harm, Black, 2009 WL 799063 at *1; and he does not allege any intentional or severe vehicular maneuvers by the deputies from which one could infer an intent to harm. Spencer, 2015 WL 4651089 at *1; Patterson, 2013 WL 3153761 at *4. Nor do the facts alleged in King's Amended Complaint plausibly suggest that the Individual Defendants and Pickens acted with an intent to harm either the fleeing driver or Kimberly King. In the absence of such allegations, King focuses on the length and speed of the chase, the fact that the deputies did not have probable cause to believe that the driver had committed a violent crime or felony, and the allegation that the deputies could have taken other investigatory steps prior to immediately instigating a vehicular chase of the driver. Amended Complaint at ¶ 66. King concludes that the officer's actions shock the conscience, and thereby provide evidence of the Individual Defendants' and Pickens' intent to harm. King's conclusion in this regard is unsupported by the facts or the applicable law.

While the officers' actions may suggest negligence, or even recklessness, they go no further. Nothing about the length and speed of the deputies' chase, or the fact that the deputies lacked probable cause to believe that the fleeing driver had committed a violent crime or felony, supports even an inference that in pursuing the driver, the deputies intended to cause harm to her, or Kimberly King. Instead, the officer's actions suggest

that they had an intent to effectuate an arrest on someone who committed a traffic violation, and who then, upon being followed by the deputies, attempted a high-speed and dangerous escape placing many innocent citizens, including Kimberly King, in significant, and indeed, mortal danger.  See e.g., Willis, 600 Fed. Appx. at 686 (evidence indicated officers were not motivated by "anything other than the desire to stop [the suspect's] reckless driving, his high speed flight from police, and his concomitant endangerment of the motoring public"); Ellis ex. rel. Estate of Ellis, 589 F.3d at 1104 (length and distance of chase, whereby officers allegedly had an opportunity to deliberate as to how to apprehend subject, was irrelevant as to whether officers had an intent to harm); Sanders, 207 Fed. Appx. at 965 (evidence established that officer pursued driver "in order to arrest him and not with an intent to cause harm"); Suit v. City of Folsom, No. 2:16-00807 WBS AC, 2016 WL 4192437, *4 (E.D. Cal. Aug. 8, 2016) ("Once a suspect flees, the Supreme Court has made it clear that the officer has a legitimate law enforcement objective in continuing pursuit until the suspect is apprehended.") (citing Scott v. Harris, 550 U.S. 372, 384-85 (2007)); Sidi, 2014 WL 1276195 at *4 ("allegations show only that [the officers] were trying to apprehend an individual suspected of stealing a vehicle."); Knight, 801 F. Supp. 2d at 1240 (facts in complaint do not support proposition that officer took actions for "some purpose other than arresting" injured party).  Nor can the Court infer that the deputies had an intent to harm the driver, or Kimberly King, from King's speculation that instead of engaging in the chase, the deputies could have "run [the fleeing driver's] license plate and apprehended her at a later time."  Amended Complaint at ¶ 66.  See also Ellis, ex. rel. Estate of Ellis, 589 F.3d at 1104 (fact that officers had opportunity to apprehend suspect at a later time did not undermine court's

finding that officers did not have intent to harm); Suit, 2016 WL 6696060 at *3 (intent to harm not established simply because officer could have apprehended fleeing driver at a later time).

Of course, one could read King's Amended Complaint as alleging that the deputies, in pursuing the driver and utilizing the stop sticks, were negligent. Nonetheless, even if the deputies did breach a duty of care to the fleeing driver or Kimberly King, a suggestion of negligence alone is not sufficient to state a § 1983 claim for a substantive due process violation. Wilcox v. Fenn, 380 Fed. Appx. 837, 839 (11th Cir. 2010) (officer's negligent behavior "was not so egregious to be arbitrary in the constitutional sense") (citing Lewis, 523 U.S. at 847); Bublitz, 327 F.3d at 491 ("mere negligence is insufficient to give rise to a constitutional violation under the Fourteenth Amendment.").

King's allegations that the deputies violated Lake County policy regarding police vehicular pursuits are similarly insufficient. Amended Complaint at ¶¶ 53-59. These actions, while of concern, do not rise to the level of a constitutional harm subject to redress under § 1983. At to this issue, the Supreme Court's decision in Lewis, is again instructive. There, the Court noted that the Ninth Circuit Court of Appeals had reversed the entry of summary judgment in favor of the defendants because the officer's failure to follow his sheriff's department's policy on police pursuits created an issue of material fact regarding whether the officer's actions satisfied the standard for a constitutional deprivation. Lewis, 523 U.S. at 839. However, the Supreme Court disagreed. Id. at 855. The Court ruled that the officer's actions should not subject him to constitutional accountability. Id. at 855. It stated that "regardless of whether [the officer's] behavior offended the reasonableness held up by tort law or the balance struck in law enforcement's own codes of sound

practice, it does not shock the conscience, and petitioners are not called upon to answer for it under § 1983." Id.; see also Jones v. Byrnes, 585 F.3d 971, 977 (6th Cir. 2009) (violation of departmental policy does not give "rise to an inference that the officers actually intended to harm the suspects, separate from the legitimate object of arrest"); Meals, 493 F.3d 720 at 730 (despite fact that officer violated departmental policy, intent to harm was not established); Mendelson v. Reyes, No. 2:16-cv-04831 (WJM), 2017 WL 773869, *2 (D. N.J. Feb. 28, 2017) (violation of police department regulations do not suffice to meet intent to harm standard).

Notably, King's allegation that the deputies violated LCSD policy requiring a deputy "to terminate a pursuit when the danger involved is greater than the offense which was committed on or believed to have been committed," Amended Complaint at ¶ 50, is quite similar to the violations of the Sacramento County Sheriff's Department's General Orders the Lewis Court found insufficient as a matter of law to create an issue of fact on the question of whether the officer's conduct rose to the level of conscience shocking. Lewis, 523 U.S. at 854-55.[16] Consistent with the guidance of Lewis, the Court finds King's allegation insufficient to support King's § 1983 claim.

---

[16] In finding summary judgment in favor of the defendants improper, the Ninth Circuit explained:
> The General Order requires an officer to communicate his intention to pursue a vehicle to the sheriff's department dispatch center. But defendants concede that Smith did not contact the dispatch center. The General Order requires an officer to consider whether the seriousness of the offense warrants a chase at speeds in excess of the posted limit. But here, the only apparent "offense" was the boys' refusal to stop when another officer told them to do so. The General Order requires an officer to consider whether the need for apprehension justifies the pursuit under existing conditions. Yet Smith apparently only "needed" to apprehend the boys because they refused to stop. The General Order requires an officer to consider whether the pursuit presents unreasonable hazards to life and property. But taking the facts here in the light most favorable to plaintiffs, there existed an unreasonable hazard to Lewis's and Willard's lives. The General Order also directs an officer to discontinue a pursuit when the hazards of continuing outweigh the benefits of immediate apprehension. But here, there was no apparent danger involved in permitting the boys to escape. There certainly was risk of harm to others in continuing the pursuit.

Accepting the factual allegations in King's Amended Complaint and drawing all reasonable inferences in his favor, the Court nevertheless finds that King has not alleged facts plausibly supporting a finding that the Individual Defendants and Pickens acted with an intent to harm or acted in a manner that shocks the conscience when they engaged in the vehicular pursuit of the driver and placed the stop sticks that ultimately resulted in Kimberly King's death. Accordingly, King has failed to sufficiently plead that the Individual Defendants and Pickens violated Kimberly King's constitutional rights. As such, King cannot maintain a § 1983 action against these Defendants.[17] Therefore, the Court will dismiss Count I against the Individual Defendants and Pickens.

### c. Counts II – IV: § 1983 Failure to Train, Custom, Policy and Practice, and Failure to Supervise Claims against Lake County Sheriff's Department, and Sheriff of Lake County, in his official capacity, and the Mascotte Police Department

King brings a trio of claims against the LCSD, the Sheriff, and the Mascotte Police Department, pursuant to Monell v. Dep't of Soc. Servs. of the City of New York, 436 U.S. 658 (1978). In particular, King alleges that these Defendants failed to effectively train their deputies, Amended Complaint at ¶ 72, "had in effect policies, practices, or customs that perpetuated and fostered the unconstitutional conduct" of the Individual Defendants and Pickens, id. at ¶ 82, and failed to properly supervise the Defendant deputies. Id. at ¶ 94.

---

Lewis, 523 U.S. at 838-39 (internal citations omitted). While this conduct may have supported a claim based on a reckless disregard standard, it did not shock the conscience and as such did not support a § 1983 claim. Id. at 855.

[17] The Court need not address the Individual Defendants' and Pickens' alternative argument regarding qualified immunity given the Court's ruling that King has failed to plausibly state a claim for a constitutional violation.

For the reasons set forth in Section IV.a, supra, the Court has determined that the claims against the LCSD, and the Mascotte Police Department are due to be dismissed, and that the Sheriff of Lake County, in his official capacity, is due to be substituted for Borders, in his official capacity as Sheriff of Lake County. As such, the sole remaining Defendant in Counts II, III and IV is the Sheriff.

Curiously, in his Motion, the Sheriff only seeks to dismiss Counts V and VII on the merits, and does not address Counts II, III and IV. Sheriff's Motion at ¶ 9. Nevertheless, in light of the Court's determination that the actions of the Individual Defendants and Pickens do not rise to the level of a constitutional violation, any claim against the Sheriff arising from these actions is due to be dismissed.

Generally, a district court may not sua sponte dismiss an action where the court has "provided the plaintiff with neither notice of its intent to dismiss the complaint nor an opportunity to respond." Jenkins v. Deutsche Bank Nat'l Trust Co., No. 07-22463-COV-GOLD/MCALEY, 2009 WL 10667428, *8 (S.D. Fla. Sept. 28, 2009) (citing Jefferson Fourteenth Assocs. v. Wometco de Puerto Rico, Inc., 695 F.2d 524, 527 (11th Cir. 1983)). See also Westley v. Alberto, RE/MAX LLC, No. 16-10666, 2017 WL 2963436, *4 (11th Cir. July 12, 2017); Tazoe v. Arbus S.A.S., 631 F.3d 1321, 1336 (11th Cir. 2011); Byrne v. Nezhat, 261 F.3d 1075, 1127 n.99 (11th Cir. 2001) abrogation on other grounds recognized by Blough v. Nazaretian, No. 16-17256, 2017 WL 3587467, *2 n.2 (11th Cir. Aug. 21, 2017). However, the Eleventh Circuit has stated that it "nonetheless will affirm a district court's dismissal of a complaint without notice . . . if reversal would be futile," Westley, 2017 WL 2963436 at *4, "or it is patently obvious that the plaintiff could not

prevail." Byrne, 261 F.3d at 1127 n.99 (quoting Wyatt v. City of Boston, 35 F.3d 13, 15 n.1 (1st Cir. 1994)).

Here, while the Sheriff has not sought to dismiss Counts II, III and IV, King cannot argue that he did not have notice that the sufficiency of the claims alleged in those counts was being challenged. Nor has King been denied the opportunity to address the sufficiency of those claims.

First, the Individual Defendants and Pickens specifically argued that King's allegations failed to state a claim for a constitutional violation. Individual Defendants' Motion at 8-15. And King directly responded to that argument. Plaintiff's Response to Individual Defendants at 6-11. Next, when the Mascotte Police Department responded to King's charges, it sought to dismiss Counts II, III and IV on the merits. In addition to arguing that King sued the wrong defendants, the Mascotte Police Department asserted that "[a]ssuming that Plaintiff named the City of Mascotte . . . as a defendant in place of the Mascotte Police Department, Plaintiff fail[ed] to state any § 1983 claim against the City because he does not adequately allege a constitutional violation." Mascotte Motion at 4. The Mascotte Police Department further argued that "[e]ven if Plaintiff alleged a constitutional violation, he still fails to state a claim for relief against the City," id. 6, in that King did not sufficiently allege how the City of Mascotte had a custom, practice or policy that lead to Kimberly King's death, or that it failed to train or supervise the deputies associated with her death. Id. at 6. King directly addressed these arguments, and in particular, explained why he has alleged that Kimberly King suffered a constitutional violation. Plaintiff's Response to Mascotte at 5-7. Therefore, King had notice that the

sufficiency of his claims in Counts II, III and IV of his Amended Complaint were being challenged, and he had an opportunity to respond to the challenge.

Moreover, the Court is convinced that King cannot prevail on Counts II, III and IV against the Sheriff. King asserts that Kimberly King's death was caused by the Sheriff's failure to effectively train his deputies, Amended Complaint at ¶ 72, that the Sheriff had in effect "policies, practices, or customs that perpetuated and fostered the unconstitutional conduct" of the Individual Defendants and Pickens, id. at ¶ 82, and that the Sheriff failed to properly supervise the defendant deputies. Id. at ¶ 94. However, in order to bring a § 1983 claim against a municipality for the actions taken by its deputies, one must show that the municipal policy, the municipality's failure to train, or its failure to supervise, caused the constitutional violation. Gold v. City of Miami, 151 F.3d 1346, 1350 (11th Cir. 1998) (citing Monell, 436 U.S. at 694-95). See also Sanders, 207 Fed. Appx. at 966 (court will "only inquire into a governmental entity's custom or policy when a constitutional deprivation has occurred"); Knight, 801 F. Supp. 2d at 1243 (court will inquire into governmental liability only upon determining that a constitutional violation has occurred). Here, the Court has determined that King's allegations are insufficient to state a claim that the Individual Defendants and Pickens violated Kimberly King's constitutional rights. Because the Court has found there is no underlying constitutional violation, King cannot maintain a § 1983 action against the Sheriff for existing policies, customs, or practices, or for a failure to train and supervise his deputies. See e.g., Long v. Slaton, 508 F.3d 576, 583 n.10 (11th Cir. 2007) (where plaintiff fails to state a claim for the violation of a constitutional right, associated supervisory claims also fail); Beshers v. Harrison, 495 F.3d 1260, 1264 n.7 (11th Cir. 2007) ("We need not address the Appellant's claims of municipal

or supervisory liability since we conclude no constitutional violation occurred."); McCormick v. City of Fort Lauderdale, 333 F.3d 1234, 1243 n.13 (11th Cir. 2003) (where court determined individual officer's actions were constitutionally permissible, there could be no associated successful policy and custom claim against the city). As such, the Court will dismiss the claims against the Sheriff in Counts II, III and IV.[18]

### d. Count V: § 1983 Ratification Claim against the Sheriff Lake County, in his official capacity, and the Individual Defendants

The remaining Defendants in King's § 1983 ratification claim are the Sheriff, and the Individual Defendants. As such, the Court limits its discussion to these parties.

Under a § 1983 ratification theory, a municipal entity may be held liable for constitutional harms where "authorized policy makers approve a subordinate's decision and the basis for it." City of St. Louis v. Praprotnik, 485 U.S. 112, 126 (1988). See also Hoefling v. City of Miami, 811 F.3d 1271, 1279 (11th Cir. 2016) ("a municipality can be held liable on the basis of ratification when a subordinate public official makes an unconstitutional decision and when that decision is then adopted by someone who does have final policy making authority") (citing Matthews v. Columbia County, 294 F.3d 1294, 1297 (11th Cir. 2002)); Cunningham v. Sch. Bd. of Lake County, No. 5:15-cv-480-Oc-30PRL, 2016 WL 1755612, *5 (M.D. Fla. May 3, 2016) (ratification exits where final policy maker ratifies decision as well as the unconstitutional basis for the decision); Adams v. Custer, No. 14-CV-80403-CIV-HURLEY, 2016 WL 155081, *21 (S.D. Fla. Jan. 12, 2016) (ratification occurs where decision maker has opportunity to review decision and agree to

---

[18] If the claims against the LCSD and the Mascotte Police Department were not due to be dismissed for the reasons previously stated, they nonetheless would be subject to dismissal due to the absence of a constitutional violation.

the decision and its basis before it becomes final).  Therefore, to assert a ratification claim, a plaintiff must allege that it was the ratification that ultimately caused the underlying constitutional harm.  Monell, 436 U.S. at 690; Salvato v. Miley, 790 F.3d 1286, 1296 (11th Cir. 2015); Mead v. McKeithen, No. 5:12-cv-325-MW/EMT, 2014 WL 12496986, *4 (N.D. Fla. Jan. 24, 2014); Adams, 2016 WL 155081 at *21; Bolander v. Taser Intern., Inc., No. 07-cv-80789, 2009 WL 2004379, *16 (S.D. Fla. July 9, 2009).

Core to a ratification claim is the existence of an underlying unconstitutional decision made by a subordinate, which is then ratified by an official policy maker.  See e.g., Hoefling, 811 F.3d at 1279 (ratification occurs in the context of a subordinate public official making an unconstitutional decision); Mead, 2014 WL 12496986 at *4 (plaintiff must show that ratification caused a constitutional violation); Matthews, 294 F.3d at 1297 ("ratification exists when a subordinate public official makes an unconstitutional decision and when that decision is then adopted by someone who does have final policymaking authority").  Here, and as noted above, the Court has determined that King has failed to plausibly allege that the actions of the Individual Defendants and John Does 1-10, rose to the level of being conscience shocking.  Lewis, 523 U.S. at 847.  Hence, the Court has concluded that Kimberly King's death, however tragic, was not a result of a constitutional violation.  In the absence of an underlying constitutional violation, King's claim of ratification against the Sheriff cannot stand.  See Pando v. Blair, No. 5:15-cv-610-Oc-34-PRL, 2017 WL 3835858, *20 (M.D. Fla. Aug. 10, 2017) (rejecting ratification claim where plaintiff failed to show defendants committed a constitutional violation).

Additionally, even if King had asserted a plausible claim that his wife suffered a constitutional deprivation at the hands of the Individual Defendants or the John Does, he

has not successfully plead that the Sheriff ratified those deputies' actions.[19]  Here, King makes no allegations supporting an inference that the Sheriff knew in advance of the car chase involving the deputies, approved of the deputies' decisions to engage in a high speed chase of the fleeing driver, or approved of any unconstitutional intent to harm by the deputies involved in the chase.  See e.g., Lewis, 523 U.S. at 854; Willis, 600 Fed. Appx at 686; Sanders, 207 Fed. Appx. at 965.  As such, King has not plausibly alleged that the Sheriff, or any official policy maker for that matter, should be held liable for Kimberly King's death under a § 1983 ratification theory.

Finally, the Court notes that King, in asserting the ratification claim, includes among the list of defendants, Jones, Sellers, Rivera, Lukens, and Does 1-10.  Amended Complaint at 18.  However, in the Amended Complaint, King asserts only that Lake County and the LCSD ratified the Individual Defendants' decision to enter in a high speed chase.  Amended Complaint at ¶¶ 105-107.  Given that the Individual Defendants were the individuals whose decisions were allegedly ratified by Lake County, the LCSD, or the Sheriff, those individuals cannot also be deemed authorized policy makers for ratification purposes.  See Individual Defendants' Motion at 23.  Moreover, King makes no argument that the individual deputies engaged in any ratification.  Finally, King does not respond in any manner to the Individual Defendants' Motion that Count V should be dismissed

---

[19] King actually alleged that Lake County and the Lake County Sheriff's Office ratified the actions of the officers involved in Kimberly King's death. Id. at ¶ 107.  However, with the dismissal of Lake County and the Lake County Sheriff's Department, there remain no policy makers alleged to have ratified the actions of the individual deputies.  After arguing as much in his Motion to Dismiss, Sheriff's Motion at 6-8, the Sheriff nonetheless asserts that even if the Sheriff was designated as the official policy maker in this action, King has failed to allege that the Sheriff ratified the individual officer's actions.  Id. at 8. While King disagrees with the Sheriff's ultimate conclusion on this matter, King nonetheless suggests in his Response that his intent was to identify the Sheriff as the policy maker for the purposes of his ratification claim.  Plaintiff's Response to Sheriff at 6.

against them.  Accordingly, as to all the Individual Defendants, as well as the Sheriff, the Court dismisses the Count V ratification claim.

### e. Counts VI – VII:  Wrongful Death Claims against the Individual Defendants, Pickens, and Borders

In Counts VI and VII, King asserts Florida wrongful death claims against the Individual Defendants and Pickens, as well as the Sherriff.  Having dismissed all of King's federal claims, the Court must determine whether to continue to maintain jurisdiction over the state law claims before considering the merits of these claims.

The Court exercised original jurisdiction over King's federal claims pursuant to 28 U.S.C. § 1331, and supplemental jurisdiction over the state claims is based on 28 U.S.C. § 1367(a).  See generally United Mine Workers v. Gibbs, 383 U.S. 715, 725 (1966).  However, pursuant to 28 U.S.C. § 1367(c), the Court may decline to continue to exercise jurisdiction over a state claim if:

> (1) the claim raises a novel or complex issue of State law,
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c).  Notably, "[a]ny one of the section 1367(c) factors is sufficient to give the district court discretion to dismiss a case's supplemental state law claims."  Parker v. Scrap Metal Processors, Inc., 468 F.3d 733, 743 (11th Cir. 2006).  However, upon determining that it has the discretion under § 1367(c) to decline jurisdiction, "[a district court] should consider the traditional rationales for pendent jurisdiction, including judicial economy and convenience in deciding whether or not to exercise that jurisdiction."

Palmer v. Hosp. Auth. of Randolph Cnty., 22 F.3d 1559, 1569 (11th Cir. 1994). Upon due consideration, the Court finds that judicial economy and convenience would not be served by retaining jurisdiction over King's state law claims.

What remains in this action are uniquely state law claims that are best addressed by the state courts. While King may have begun discovery, see Doc. 62 (Order Denying Motion for Protective Order), filed June 5, 2017, this Court has made no dispositive rulings as to the state law claims. Thus, the early procedural posture of the case weighs in favor of declining jurisdiction in order to allow the case to proceed fully in state court. Indeed, when, as here, a plaintiff's federal claims are dismissed prior to trial, the Eleventh Circuit Court of Appeals has "encouraged district courts to dismiss any remaining state claims." Raney v. Allstate Ins. Co., 370 F.3d 1086, 1089 (11th Cir. 2004); Busse v. Lee Cnty., Fla., 317 Fed. Appx. 968, 973-74 (11th Cir. 2009) ("Since the district court 'had dismissed all claims over which it has original jurisdiction,' it therefore had the discretion not to exercise supplemental jurisdiction over [Appellant's] state law claims. 28 U.S.C. § 1367(c)(3). Furthermore, we expressly encourage district courts to take such action when all federal claims have been dismissed pretrial."). See also Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine – judicial economy, convenience, fairness, and comity – will point toward declining to exercise jurisdiction over the remaining state-law claims.").

Upon consideration of the § 1367 factors and the "traditional rationales for pendent jurisdiction, including judicial economy and convenience," see Palmer, 22 F.3d at 1569, the Court declines to continue to exercise supplemental jurisdiction over Counts VI and

VII of the Amended Complaint. Accordingly, Counts VI and VII are dismissed without prejudice. Crosby v. Paulk, 187 F.3d 1339, 1352 (11th Cir.1999) (dismissing claims without prejudice so they may be filed in the appropriate state court); Baggett v. First Nat. Bank of Gainesville, 117 F.3d 1342, 1353 (11th Cir.1997) (dismissing state claims without prejudice, where the plaintiffs' federal claims had been dismissed prior to trial).

In light of the foregoing it is

**ORDERED:**

1. Defendant Gary S. Borders, in his official capacity as Sheriff of Lake County's Motion to Dismiss (Doc. 20) is **GRANTED**.

   a. The Sheriff of Lake County, in his official capacity, is substituted for Defendant Borders;

   b. The Clerk of the Court is directed to correct the case style accordingly;

   c. Lake County Sheriff's Department is dismissed as a Defendant from this action;

   d. The claims against the Sheriff of Lake County, in his official capacity, in Counts II – V are **DISMISSED with prejudice**; and

   e. The claim against the Sheriff of Lake County, in his official capacity, in Count VII is **DISMISSED without prejudice**.

2. Defendants Nick Jones, Robert Sellers, Pablo Rivera and Shawn Lukens' Motion to Dismiss (Doc. 22) is **GRANTED** to the extent that

   a. The claims against Jones, Sellers, Rivera, and Lukens in Counts I and V are **DISMISSED with prejudice**; and

b. The claim against Jones, Sellers, Rivera, and Lukens in Count VI is **DISMISSED without prejudice**.

3. Defendant Nate Pickens' Motion to Dismiss ([Doc. 24](Doc. 24)) is **GRANTED** to the extent that

   a. The claim against Pickens in Count I is **DISMISSED with prejudice**; and

   b. The claim against Pickens in Count VI is **DISMISSED without prejudice**.

4. Defendant Mascotte Police Department's Motion to Dismiss ([Doc. 37](Doc. 37)) is **GRANTED** and the claims against the Mascotte Police Department are **DISMISSED with prejudice**.

5. The claims against John Does 1-10 are **DISMISSED without prejudice**.

6. The Clerk of the Court is directed to enter **JUDGMENT** consistent with this Order.

7. The Clerk of the Court is further directed to terminate any remaining pending motions and deadlines as moot and close the file.

**DONE AND ORDERED** in chambers, this 19th day of December, 2017.

MARCIA MORALES HOWARD
United States District Judge

lc26
Copies to:

Counsel of Record
Pro Se Parties